Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
|                          |   |                |                  |
|--------------------------|---|----------------|------------------|
| IN RE:                   | ) | CASE NO.       | 08-32706 (LMW)   |
|                          | ) |                |                  |
| JACQUELINE W. LAPIC,     | ) | CHAPTER        | 7                |
|                          | ) |                |                  |
| DEBTOR.                  | ) |                |                  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
| BANK OF AMERICA,         | ) | ADV. PRO. NO.  | 08-03123 (LMW)   |
|                          | ) |                |                  |
| PLAINTIFF                | ) | DOC. I.D. NO.  | 18               |
|                          | ) |                |                  |
| vs.                      | ) |                |                  |
|                          | ) |                |                  |
| JACQUELINE W. LAPIC,     | ) |                |                  |
|                          | ) |                |                  |
| DEFENDANT.               | ) |                |                  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

Kevin J. Burns, Esq.                     Attorney for the Plaintiff
Cohen, Burns, Hard & Paul
81 South Main Street, 2nd Floor
West Hartford, CT 06107

Ronald J. Piombino, Esq.                 Attorney for the Defendant
Burdick & Piombino, LLC
63 Wall Street
Madison, CT 06443

**MEMORANDUM OF DECISION RE:**
**MOTION FOR DEFAULT JUDGMENT**

Lorraine Murphy Weil, United States Bankruptcy Judge

The matter before the court is Creditor Bank of America's ("Bank of America") Motion for Judgment After Default (Doc. I.D. No. 18, the "Motion")[1] pursuant to which Bank of America seeks an entry of judgment against the above-captioned debtor (the "Debtor") to the effect that credit card debt in the amount of $2,172.00 (the "Subject Charges") owing to Bank of America is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A), or alternatively, Bankruptcy Code § 523(a)(2)(C). The court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[2]

I.  **PROCEDURAL BACKGROUND**

The Debtor and her husband commenced this chapter 7 case by petition filed on August 18, 2008 (the "Petition Date"). Bank of America filed its adversary proceeding against the Debtor on November 8, 2008.[3] Upon a motion (A.P. Doc. I.D. No. 10) filed by Bank of America, the Clerk's Office issued a default against the Debtor for failure to plead on December 29, 2008. (*See* A.P. Doc. I.D. No. 13.) On February 6, 2009, Bank of America moved for a default judgment. (*See* A.P. Doc. I.D. No. 18.) Bank of America filed a Memorandum in Support of Motion for Judgment (the "Supporting Memorandum") on March 3, 2009. (*See* A.P. Doc. I.D. No. 21.) The Motion was supported by an Affidavit of Claim (included in A.P. Doc. I.D. Nos. 18 and 21, the "Affidavit").

---

[1] References herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of the chapter 7 case appear in the following form: "Case Doc. I.D. No. ___."

[2] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[3] The Debtor's husband, David Lapic, is not a party to this adversary proceeding, as he is not a cardholder on the subject account.

The Debtor (through counsel) filed a notice of appearance and a late answer on December 31, 2008. (*See* A.P. Doc. I.D. Nos. 14 and 15.)  However, the Debtor did not seek to have the Clerk's entry of default set aside, nor did the Debtor contest the Motion.

Bank of America alleges that the Debtor was insolvent when the Subject Charges were made and therefore had no intention of repaying, and at all relevant times intended to have the debt discharged. (*See* Supporting Memorandum at 1.)  Bank of America further alleges that to the extent the Subject Charges were for luxury goods, such charges should be presumed nondischargeable pursuant to Section 523(a)(2)(C). *(See id.)*  Finally, Bank of America alleges that the Subject Charges were incurred over a period of less than ninety days prior to the Petition Date. (*See id.*)

## II.     DEFAULT JUDGMENT STANDARD

Rule 7055 of the Federal Rules of Bankruptcy Procedure (applying Rule 55 of the Federal Rules of Civil Procedure) governs the entry of judgment by default. *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 867 (B.A.P. 2d Cir. 1997). *See also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2686, at 45 (3d ed. 1998) (hereafter, "*Wright, Miller & Kane*") ("[I]n order to ensure defendant an opportunity to defend against plaintiff's application, a court usually will try to find that there has been an appearance by defendant, which has the effect of requiring that notice of the application for a default be given.").

The Debtor failed to plead in a timely manner.[4]  However, an entry of judgment by default is not granted as a matter of right.  Rather, the court in its discretion may conduct a hearing "requir[ing] some proof [from the Plaintiff] of the facts that must be established in order to

---

[4]     As noted above, a late answer and notice of appearance were filed on December 31, 2008.

- 3 -

determine [the Debtor's] liability." *Wright, Miller & Kane* § 2688, at 60-61. At the court's discretion, such proof may be made by affidavit. *See* Fed. R. Civ. P. 43(c) (made applicable here by Fed. R. Bankr. P. 9017). Further, "where the allegation is one of fraud, it is appropriate that the court [evaluate] . . . the evidence to insure that the drastic remedy of a determination of non-dischargeability is not entered without the presentation of a prima facie case." *United Counties Trust Co. v. Knapp (In re Knapp)*, 137 B.R. 582, 585 (Bankr. D. N.J. 1992). *See also General Electric Capital Corp. v. Bui (In re Bui)*, 188 B.R. 274, 276 (Bankr. N.D. Cal. 1995) ("A plaintiff must demonstrate a *prima facie* case by competent evidence in order to obtain a [d]efault [judgment]."). A plaintiff has made a satisfactory *prima facie* showing where, from the evidence presented, "a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1075 and *reh'g denied*, 523 U.S. 1041 (1998) (*abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

## III.   FACTUAL BACKGROUND

The following "facts" originated in the Debtor's bankruptcy schedules and Statement of Financial Affairs filed with this court (included in Case Doc. I.D. No. 1, collectively, the "Schedules") or Bank of America has made *prima facie* proof of the same pursuant to the Affidavit and attached credit card statements.[5] Accordingly, the following "facts" are deemed established for the purposes of this memorandum.

---

[5]   Bank of America attached account statements (the "Statements") for the months April-July 2008 to its Motion and Supporting Memorandum (A.P. Doc. I.D. Nos. 18 and 21).

The Debtor opened the Bank of America account (the "Account") on May 25, 2006 with a credit limit of $9,000.00. (Affidavit ¶ 3.) At all times prior to March 31, 2008, the balance on the Account was no greater than $2,445.89. (Affidavit ¶ 4.) Between March 31, 2008 and July 8, 2008 the balance rose to $8,811.02. (Affidavit ¶ 5.) During this period, only two payments were made: $200.00 on April 1, 2008 and $100.00 on May 1, 2008. (*See* Statements.) Based on those payments, the Account was in default beginning on June 23, 2008, the date after the next payment was due. (*See* 6/08 Statement.) The Schedules indicate a negative net income for the calendar years 2006, 2007, and 2008 (*see* Schedules (Statement of Financial Affairs, Items 1 and 2)) and $0.00 monthly income (*see* Schedules (Schedule I - Current Income of Individual Debtor(s))).

The Supporting Memorandum focuses on the ninety day period prior to the Petition Date. This is the requisite time period under Bankruptcy Code § 523(a)(2)(C). Bank of America asks the court to determine the extent to which the Subject Charges constitute a debt for luxury goods for purposes of the subsection and to determine whether any of the Subject Charges may be nondischargeable due to false pretenses, false representations, or actual fraud.

## IV.   DISCUSSION[6]

### A.   False Pretenses, False Representations, or Fraud Under Bankruptcy Code § 523(a)(2)(A)

To obtain an entry of default judgment on its claim of nondischargeability, Bank of America must establish a *prima facie* case of false pretenses, false representation, or fraud under

---

[6] This discussion focuses on the time period for which Bank of America has offered Account Statements, April through July 2008. The Supporting Memorandum focuses strongly on the ninety days before the filing of bankruptcy, both in its discussion of Bankruptcy Code § 523(a)(2)(A) and § 523(a)(2)(C), but for the purposes of subsection (A), earlier dates are discussed when relevant.

- 5 -

§523(a)(2)(A). *See American Express Centurion v. Truong (In re Truong)*, 271 B.R. 738, 741 (Bankr. D. Conn. 2002) (*citing United Counties Trust Co. v. Knapp (In re Knapp)*, 137 B.R. 582, 585 (Bankr.D.N.J.1992)) ( "[W]here the allegation is one of fraud, it is appropriate that the court [evaluate] . . . the evidence to insure that the drastic remedy of a determination of nondischargeability is not entered without the presentation of a prima facie case.") A *prima facie* case is established when the evidence presented is such that "a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." *Truong*, 271 B.R. at 741 (*citing Fisher*, 114 F.3d at 1336).

  Bankruptcy Code § 523(a)(2)(A) allows the court to make a determination of nondischargeability for "any debt – for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C.A. § 523(a)(2)(A). To establish a *prima facie* case, Bank of America must prove the following elements: (1) the Debtor made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving Bank of America; (4) upon which representations Bank of America actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by Bank of America. *Truong*, 271 B.R. at 744. Exceptions to discharge must be strictly construed in favor of the Debtor in order to effectuate the fresh start policy of bankruptcy. *Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.). Furthermore, the "[D]ebtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Id.* at 165-66 (citation and internal quotation marks omitted).

### 1. Representations and Knowledge

In *Truong*, the court adopted the "implied representation" view by which each use of a credit card is a representation of an intent to pay. *Truong*, 271 B.R. at 745. Under this view, the Debtor made representations of intent to pay each time she charged an item to her Bank of America credit card. (*See* Statements.)

As noted above, the Debtor had no monthly income at the time she made the Subject Charges. Additionally, the Schedules show a negative net income from 2006-2008. (*See* Schedules (Schedule I - Current Income of Individual Debtor(s) and Statement of Financial Affairs, Items 1 and 2).) As she had no income when she accrued the Subject Charges, a reasonable finder of fact could find that the Debtor had knowledge of her lack of ability to make the contractual payments (at least after the June 2008 payment due date).[7] Under the "implied representation" approach, that satisfies the first two elements of the *prima facie* case.

### 2. Intent to Deceive

*Truong* adopts a "totality of the circumstances" approach in discerning a debtor's intent to defraud. *Truong*, 271 B.R. at 745-46. This approach applies a number of objective factors detailed by the court in *Citibank South Dakota N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (B.A.P. 9th Cir. 1988) (*abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991)), and is appropriate for use here. Those factors, which are non-exhaustive, include: (1) time elapsed between the charges and the bankruptcy filing; (2) whether the debtor consulted an attorney with respect to the filing of bankruptcy prior to incurring the Subject Charges; (3) number and amount

---

[7] Until defaulting in June 2008, the Debtor had made adequate payments despite her lack of income. There is insufficient evidence as to whether or not the Debtor knew she would not be able to make the June payment.

of charges; (4) financial condition of debtor when charges were incurred; (5) if the charges exceeded the credit limit; (6) if multiple charges were incurred on the same day; (7) if the debtor was employed (and if not, the debtor's prospect for employment); (8) the debtor's financial sophistication; (9) if there were any sudden changes in the debtor's spending habits; and (10) if charges were made for the purchase of luxury items or necessities. An analysis of these factors and other relevant circumstances "may provide sufficient circumstantial evidence for a court to infer that a debtor intended, at the time the debt was incurred, not to pay it." *Universal Bank, N.A. v. Owen (In re Owen)*, 234 B.R. 857, 860 (Bankr. D. Conn. 1999) (Krechevsky, J.). An analysis of the *Dougherty* factors as pertaining to the present case shows that there is not enough evidence to allow a reasonable finder of fact to determine that the Debtor acted with intent to deceive.

Certain *Dougherty* factors support Bank of America. First, the Subject Charges accrued during the period close to the filing of bankruptcy. Prior to March 31, 2008 the Account balance was never greater than $2,445.89, but by July 8, 2008 it had risen to $8,811.02. The Debtor and her husband filed for bankruptcy just over a month later, on August 18, 2008. Another factor requires an inquiry into the debtor's financial condition at the time the charges were made. The Debtor's bankruptcy petition shows a negative income for 2006, 2007, and 2008 and a monthly income of $0.00. (*See* Schedules (Schedule I - Current Income of Individual Debtor(s) and Statement of Financial Affairs, Items 1 and 2).)

However, several factors weigh in the Debtor's favor. Although the balance rose at a fast rate, the pattern of charges is not overwhelmingly alarming. The Debtor rarely made multiple charges in a single day and did not have an exorbitant number of charges each month. The balance on the Account never exceeded the credit limit of $9,000.00. The pattern of charges for the month

of April appears to be more numerous than any other single month, but Bank of America's request for relief appears to be for charges that accrued within the ninety days prior to the bankruptcy filing date, May 20–August 18, 2008.

Additionally, the number of charges does not reveal intent. Bank of America offers little proof other than the Statements, which do not show as heavy a pattern of card use as in *Truong*, and it is left to the court to determine whether this sufficiently indicates the requisite intent. The Statements show a payment of $200.00 on April 1, 2008 and a payment of $100.00 on May 8, 2008. The next payment, a minimum of $151.00, was due on June 22, 2008. That payment was not made and the Account became in default on that date. The Debtor does not appear to have made any payments between the date of default and the filing of bankruptcy. (*See* Statements.) Following the date of default, the Debtor made three charges to the Account: $64.50 to East Haven Hess on June 30, 3008; $1,000.00 to Yale New Haven Hospital on July 1, 2008; and $350.00 to Vacation Register, FL on July 8, 2008. (*See* 7/08 Statement.)

The charges that accrued prior to the Account entering default vary. At least one charge is for a substantial amount. The Debtor charged $2,202.30 to Nordic Pole Walking USA-FL. An examination of the Schedules reveals that this charge may be related to one of the Debtor's businesses, Second Solution, LLC, dba Nordic Pole Walking USA-CT, but Bank of America offers no information other than that listed on the Statements. (*See* Schedules (Schedule B - Personal Property, Item 13); 5/08 Statement.) The Debtor charged $193.47 to "godaddy.com" on June 1, 2008. Godaddy.com appears to be a web domain registrar, but Bank of America offers no evidence as to the nature of the charge.

Other *Dougherty* factors look to the Debtor's employment or prospect for obtaining employment and level of financial sophistication. Bank of America's discussion of intent does not include employment, so the court must look to the bankruptcy petition. The petition indicates that the Debtor was unemployed, but her co-debtor was self-employed as an "Affiate/Instructor [sic]." (*See* Schedules (Schedule I - Current Income of Individual Debtor(s)).) The Debtor's petition also indicates that the Debtor and co-debtor owned two businesses, but otherwise, the Debtor's level of financial sophistication is not known. (*See id.* (Schedule B - Personal Property, Item 13); Supporting Memorandum at 3). Additionally, there is no evidence as to whether or not the Debtor consulted an attorney regarding the filing of bankruptcy prior to making the Subject Charges.

Finally, it is unclear whether most of the Subject Charges were for luxury goods or necessities. To the extent that charges were made within the statutory ninety day time period (May 20-August 18, 2008), a full discussion may be found below. Bank of America does not appear to be concerned with charges outside of the ninety day time period, even to the extent that such charges would not otherwise fall within the scope of Section 523(a)(2)(C).

Using the totality of the circumstances approach articulated in *Truong*, Bank of America has not satisfied the element of intent required to prove a *prima facie* case of fraud. The Debtor made only three charges after the Account entered default, which, on its face, is not enough to prove intent. Although the Statements show a number of charges in the four months prior to the filing of bankruptcy in August 2008, there is insufficient evidence to show that the Debtor intended to defraud Bank of America.

### 3. Reliance

Bank of America also fails to establish a *prima facie* case of actual and justifiable reliance on the Debtor's misrepresentations. Actual reliance is established if Bank of America can show that it would not have approved the Subject Charges "in the absence of debtor's promise [or representation] to pay (through card-use)." *Truong*, 271 B.R. at 747 (*citing AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 411 (5th Cir.2001)). To establish justifiable reliance, Bank of America must make a showing that, based on its relationship with the Debtor, including the credit screening process, it had no reason to believe that the Debtor would not fulfill her representations of intent to pay. *Truong*, 271 B.R. at 747.

In its Supporting Memorandum, Bank of America does not dedicate sufficient discussion to the element of reliance. Instead, it merely attempts to distinguish *Truong* in a single sentence: "Unlike *Truong* however, there is no reason to believe that plaintiff's reliance on his [sic] intention to repay the charges would not be justified since the debtor here not only was never delinquent on the account but simply never made use of the account." (Supporting Memorandum at 3-4.) Bank of America does not discuss actual reliance and offers insufficient proof of actual or justifiable reliance. Without further information, Bank of America has not satisfied the element of reliance.[8]

### B. Luxury Goods Under Section 523(A)(2)(C)

Next it must be determined whether any of the Subject Charges may be presumed nondischargeable under §523(a)(2)(C). To obtain a presumption of nondischargeability, Bank of

---

[8] Because Bank of America has failed to make a *prima facie* case on the reliance issue, it also has failed to make a *prima facie* case on the proximate cause issue. *Cf. Truong*, 271 B.R. at 748 n.17.

America must show that the relevant charges were for "luxury goods" within the purview of §523(a)(2)(C).  *See* 11 U.S.C.A. § 523(a)(2)(C).

Under Bankruptcy Code § 523(a)(2)(C), "consumer debts owed to a single creditor and aggregating more than $550 for luxury goods or services" may be presumed nondischargeable if "incurred by an individual debtor on or within 90 days before the order for relief under this title." 11 U.S.C.A. § 523(a)(2)(C)(i)(I).  Section 523(a)(2)(C) states that "the term 'luxury goods or services' does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor." 11 U.S.C.A. § 523(a)(2)(C)(ii)(II).

There are numerous considerations a court may use in determining whether a debt is for a luxury good or service.  It is usually necessary to look to the circumstances surrounding the purchase.  Generally, courts look to whether or not the goods or services were necessary, served a significant family function, and whether the purchase was financially responsible.  Purchases that are nonessential, extravagant or indulgent may be deemed luxurious. *See In re Meyer*, 296 B.R. 849, 865 (Bankr. N.D. Ala. 2003) ("Considerations bearing upon whether or not an item is a luxury good include the circumstances surrounding the purchase, whether the item serves a significant family function, and whether the purchase shows financial irresponsibility.").  *See also In re Feddersen*, 270 B.R. 733, 736 (Bankr. N.D. Iowa 2001); *In re Shaw*, 294 B.R. 652, 655 (Bankr. W.D. Pa. 2003) (*citing In re Blackburn*, 68 B.R. 870, 874 (Bankr. N.D. Ind. 1987)) ("[A]s a matter of law, '[c]ertain goods [or services] may not qualify as necessities and [they] still [will] not be luxuries.'")).

In the present case, the relevant ninety day period is May 20, 2008 through August 18, 2008 (the Petition Date).  Bank of America asks the court to use the Statements to determine whether

certain charges were for luxury goods. (*See* Supporting Memorandum at 4.) There is no information about those charges other than that provided by the Statements.

The following are the charges for which Bank of America seeks a determination of a presumption of nondischargeability by the court. The Debtor accrued each charge within the relevant statutory period:

>    (1) May 28: $267.50, Airtranair
>
>    (2) June 2: $193.47, godaddy.com
>
>    (3) June 20: $67.00, Connecticut Limousine
>
>    (4) July 2: $1000.00, Yale New Haven Hospital[9]
>
>    (5) July 9: $350.00, Vacation Register, FL

The information provided by Bank of America is insufficient to determine whether charges (1), (2), and (5) are luxury purchases. Charge (1) appears to be for the purchase of plane tickets to Atlanta, GA, but the court has no information related to the circumstances of that purchase. A purchase of plane tickets for the purpose of a vacation might conceivably be deemed a luxury, while it is arguable that the purchase of the same tickets to visit a relative who is ill may not be deemed a luxury. Likewise, charge (2) is a purchase from godaddy.com, which, among other functions, registers web domains. Bank of America has provided no information to assist the court in determining the reason for the Debtor's purchase. Charge (5) appears on its face to be a luxury, in that "Vacation" does not strike most as either necessary or responsible for a person with little income. However, "Vacation Register, FL" is a company that helps individuals sell and rent time-

---

[9] Bank of America notes that this payment is not included in the Debtor's Statement of Financial Affairs, Item 3.a. (*See* Supporting Memorandum at 4.)

- 13 -

shares.[10] The Debtor's bankruptcy petition shows that she and the co-debtor own a time-share in Las Vegas, Nevada. (*See* Schedules (Schedule A - Real Property).) It is conceivable that Charge (5) was connected to an attempt to sell the time-share. On this record, the court only can speculate as to the nature of the charge.

Charge (3) is similar, in that a charge to a limousine company appears, on its face, to be a luxury. However, if this is the only charge that is found to be a luxury purchase, at $67.00 it is insufficient to find a presumption of nondischargeability, as the statute requires a cumulative total of $550.00.

Finally, Charge (4) is a payment made to Yale New Haven Hospital. Without further information on the circumstances surrounding the charge (for example, the charge might relate to elective cosmetic surgery or to an emergency appendectomy), the court cannot determine whether such payment would relate to a luxury good or service.

Given the information Bank of America has provided, and the information that may be gleaned from the bankruptcy petition, it is clear that no more than $67.00 reasonably may be determined to be charges for luxury goods or services. Since $67.00 does not meet the statutory floor of $550.00, there is no presumption of nondischargeability under Bankruptcy Code § 523(a)(2)(C).

---

[10]    *See* http://www.vacationregister.com/.

## V. CONCLUSION

For the reasons stated above, the Motion shall be denied by a separate marginal order.

Dated: August 4, 2009                                      BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge